UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEYMON SHANKLIN,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTOPHER SURANE and JEFFREY BAKOWSKI,<br><br>Defendants. | NO. 1:23-CV-16846<br><br>Judge Edmond E. Chang |

**MEMORANDUM OPINION AND ORDER**

Back in December 2021, Keymon Shanklin was a detainee in the Cook County Jail. R. 39, Am. Compl. ¶¶ 6–7.[1] He brings this civil-rights lawsuit, 42 U.S.C. § 1983, alleging that Sergeant Christopher Surane and Officer Jeffrey Bakowski used excessive force against him when they escorted him from his cell to another area within the jail. *Id.* ¶ 9, 13–16.[2] The Defendants move for summary judgment, arguing that Shanklin did not properly exhaust his administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). R. 83, Bakowski Mot.; R. 85, Bakowski Br.; R. 86, Surane Mot.; R. 88, Surane Br. For the reasons explained in this Opinion, even with the benefit of reasonable inferences, the Court concludes that Shanklin failed to properly exhaust administrative remedies as to the federal

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

[2]The Court has subject matter jurisdiction over this case under 28 U.S.C. § 1331.

excessive-force claim against Bakowski. But there are genuine disputes of fact as to whether administrative remedies were available as to the claim against Surane. An evidentiary hearing is needed to resolve that dispute.

## I. Background

### A. Local Rule 56.1 Statements

As a threshold matter, Bakowski argues that his Local Rule 56.1(a)(2) statement of facts should be deemed admitted in its entirety because Shanklin failed to respond to the statement. R. 100, Bakowski Reply at 2. As a general matter, that is right: under Local Rules 56.1(b)(2) and 56.1(e)(2), Shanklin's wholesale failure to respond to Bakowski's statement would typically result in the admission of Bakowski's asserted facts. *See* N.D. Ill. L.R. 56.1(e)(2)–(3). The Seventh Circuit "has consistently upheld district judges' discretion to require strict compliance with Local Rule 56.1." *Flint v. City of Belvidere*, 791 F.3d 764, 767 (7th Cir. 2015); *see also Stevo v. Frasor*, 662 F.3d 880, 886–87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings."). With an important exception described next, the Court accepts as true the facts set forth in Bakowski's Local Rule 56.1(a)(2) statement "to the extent th[ose] facts [a]re supported by admissible and docketed evidence." *Kreg Therapeutics, Inc. v. VitalGo, Inc.*,

919 F.3d 405, 411 (7th Cir. 2019) (cleaned up)[3]; *see also Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218 (7th Cir. 2015) ("When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by [Local Rule 56.1], those facts are deemed admitted for purposes of the motion." (cleaned up)).

Having said that, Shanklin did file a response to Surane's Local Rule 56.1(a)(2) statement, and the response disputed certain facts. *See generally* R. 99, Pl.'s Resp. to Surane SOF.[4] "To dispute an asserted fact, a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact." N.D. Ill. L.R. 56.1(e)(3). At the summary judgment stage, the facts are viewed in Shanklin's favor and he gets the benefit of reasonable inferences. *Scott v. Harris*, 550 U.S. 372, 378 (2007). To the extent that Shanklin denies facts in Surane's Local Rule 56.1 statement that are also in Bakowski's statement, the Court will consider the dispute as to both Defendants. In civil cases, the long-standing rule is that inconsistent trial verdicts are not permitted. *Will v. Comprehensive Acct. Corp.*, 776 F.2d 665, 677 (7th Cir. 1985). By extension to this earlier procedural stage, courts ought to have discretion to avoid blatant inconsistency on

[3]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

[4]Local Rule 56.1 statements of facts are cited as "SOF."

basic facts. In any event, as explained in detail later in the opinion, Bakowski prevails on his motion anyway.

**B. Factual Background**

As noted earlier, in deciding both motions for summary judgment, the Court views the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Except as otherwise noted below, the recitation of the factual background represents the undisputed facts as present in the parties' Local Rule 56.1 statements. The Court also must give the benefit of reasonable inferences to Shanklin as the non-movant.

In April 2021, Keymon Shanklin was booked into the Cook County Jail as a pretrial detainee. Am. Compl. ¶ 6; R. 84, Bakowski SOF ¶¶ 1, 7; R. 84-1, Bakowski SOF Exh. A, Cook County Booking Card; R. 87, Surane SOF ¶ 1; R. 87-1, Surane SOF Exh. A, Cook County Booking Card. Surane and Bakowski were correctional officers working at the facility. Bakowski SOF ¶ 2; Surane SOF ¶ 2.

To exhaust administrative remedies, the grievance procedures at the Cook County Jail require detainees to fill out and submit a grievance form within 15 days of the alleged offense, and then (if the grievance is denied) to appeal the grievance response within 15 days from receipt. Bakowski SOF ¶¶ 8, 13; R. 84-4, Bakowski SOF Exh. D, Lake Decl. ¶ 8. This requirement is set forth on the inmate grievance response/appeal form, which is available in each living unit or through personnel assigned to the units. Bakowski SOF ¶ 11; Lake Decl. ¶ 6; *see* R. 84-3, Bakowski SOF

Exh. C, Shanklin Grievance Forms at 20 (CCSAO000721).[5] After a detainee fills out a grievance form, they are instructed to hand the completed form directly to a correctional rehabilitation worker or correctional supervisor. Bakowski SOF ¶ 16; Lake Decl. ¶ 9. Detainees are supposedly advised to submit written grievances to make a formal complaint if they believe that they have been injured, harassed, abused, or threatened, Surane SOF ¶ 5; Lake Decl. ¶¶ 5, 16, though Shanklin testified that he was not provided with grievance procedures, and was not advised by staff on the grievance procedures, Pl.'s Resp. to Surane SOF ¶¶ 5, 7; R. 99, Pl.'s Resp. to Surane SOF Exh. 1, Shanklin Decl. ¶¶ 3–5; R. 84-2, Bakowski SOF Exh. B, Shanklin Dep. at 20:24–21:12, 25:17–26:2.

On December 17, 2021, Shanklin submitted a grievance naming Surane as the accused for an incident that happened when Surane was bringing Shanklin from his cell to another part of the Jail. Bakowski SOF ¶ 25; Shanklin Grievance Forms at 17 (CCSAO000718); Shanklin Dep. at 31:24–32:2. The grievance alleges that Surane pushed Shanklin's face into "the glass" (presumably the glass window of a cell), breaking Shanklin's teeth:

> I was asking for a [psych] evaluation. I put my hand in the food port to get the Sarge over to 1E. Once he came he said "put your arm back in and I'll get you that [psych] [eval]." I said ok and he came back and said "get dress." Then once I was dress he told me "I got something for you once we get in this inner lock." I then try to stop them from taking me there but then I gave in and once we were in the inner lock he push my face using [excessive] force in to the glass. I

[5]Citation page numbers refer to the PDF page numbers for all exhibits, except for depositions, the page numbers at the top of each page for depositions, and the page numbers at the bottom of each page for briefs. The Bates numbers for evidentiary documents are also included for clarity.

> felt my teeth break I then looked up at the [camera] to show that my tooth was broke. They took me down to medical I reported it to them. They did nothing.

Shanklin Grievance Forms at 17 (CCSAO000718); Shanklin Dep. at 32:11–33:8; Surane SOF ¶ 21. Around two weeks later, on December 30, Shanklin received a response to the grievance. Bakowski SOF ¶ 26; Shanklin Grievance Forms at 20 (CCSAO000721); Shanklin Dep. at 33:15–35:8. In the section entitled, "CRW/Referred this Grievance to," the response form contains the handwritten letters "OPR I/J," with no additional context (though it is now known that OPR stands for Office of Professional Review). Shanklin Grievance Forms at 20 (CCSAO000721). The response form also stated, "see attachment," in the section designated "Response by Personnel Handling Referral." *Id.* Shanklin signed the response form, with an apparent corresponding date of December 30, 2021. *Id.*; Shanklin Dep. at 34:12–18. But he did not fill out the appeal section of the response form. Bakowski SOF ¶ 30; Shanklin Dep. at 39:15–40:13; *see* Shanklin Grievance Forms at 20 (CCSAO000721).

There supposedly were two documents included with the response form, but Shanklin denies receiving them. *See* Shanklin Grievance Forms at 18–19 (CCSAO000719–CCSAO000720); Pl.'s Resp. to Surane SOF ¶¶ 24–26; Shanklin Dep. at 35:2–7, 36:19–23, 39:8–9. The first document is titled, "I.I.C. Grievance Number: 2021x17845," and states that although the allegations in the grievance cannot be substantiated, the grievance "has been forwarded to the Offices of Professional Review and Divisional Superintendent for their review and/or investigation." Shanklin Grievance Forms at 18 (CCSAO000719). The document also informs Shanklin that

he "may follow-up with the Office of Professional Review by contacting their office directly, by utilizing the address below," and "[t]o exhaust your administrative remedy (regardless of the OPR investigation review, determination, or outcome) you must appeal this immediate grievance response within 15 calendar days." *Id.* The second document is a copy of an email to "CCSO OPR," forwarding a copy of Shanklin's grievance "for a review and/or investigation." *Id.* at 19 (CCSAO000720). The email also includes an Emergency Grievance Action Form, and asks that "an Emergency Grievance Action Form be completed within five (5) calendar days."[6] *Id.* To repeat, according to Shanklin, he did not receive any of these additional documents. Pl.'s Resp. to Surane SOF ¶¶ 24–26; Shanklin Dep. at 35:2–7, 36:19–23, 39:8–9. Shanklin eventually filed this suit in December 2023.

In the operative amended complaint, R. 39, Shanklin asserts an excessive-force claim against the Defendants under 42 U.S.C. § 1983. Am. Compl. ¶¶ 13–16. Because Shanklin was a pretrial detainee, this claim must be brought under the Fourteenth Amendment's Due Process Clause. In Counts 2 and 3, Shanklin brings two state law claims against the Defendants, one for intentional infliction of emotional distress (Count 2) and the other for battery (Count 3).

[6]The Emergency Grievance Action Review Form was reviewed and approved by "Lt. Santos #713" on December 23, 2021. Shanklin Grievance Forms at 21 (CCSAO000722). The Emergency Grievance Action Review Form also states that Shanklin "was issued an Office of Professional Review Complaint Register Form" by Sergeant Duran #3214. *Id.*

## II. Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott*, 550 U.S. at 378. The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

## III. Analysis

The Prison Litigation Reform Act (commonly referred to as the PLRA) bars prisoners from bringing federal claims, including § 1983 actions, "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "To exhaust

available remedies, a prisoner must comply strictly with the prison's administrative rules by filing grievances and appeals as the rules dictate." *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020). Exhaustion is an affirmative defense, so prison officials bear the burden of showing that a prisoner failed to exhaust administrative remedies. *See id.* In deciding whether that burden has been met, a district court must hold a *Pavey* hearing (that is, an evidentiary hearing) to resolve genuine factual disputes. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). Just like any other summary judgment motion, courts view the facts underlying exhaustion in the light most favorable to the non-movant. *See Reid*, 962 F.3d at 327 (applying typical summary judgment standard to exhaustion dispute). But if there is no genuine factual dispute, then courts may decide exhaustion at summary judgment. *See Jones v. Lamb*, 124 F.4th 463, 469 (7th Cir. 2024) (affirming summary judgment on a particular claim on exhaustion grounds without an evidentiary hearing).

**A. Bakowski**

First up is Bakowski's summary judgment motion. Bakowski argues that Shanklin did not exhaust administrative remedies because Shanklin (1) failed to identify Bakowski in the grievance form; (2) failed to present in the grievance form the claims that Shanklin now wants to pursue via the amended complaint; and (3) failed to appeal the response to the grievance. Bakowski Br. at 6–12. The Court will address the first two arguments in this section of the Opinion, and the third argument when discussing Surane's motion.

As a preliminary issue, Bakowski points out (correctly) that Shanklin entirely failed to respond to Bakowski's motion, which should result in waiver. Bakowski Reply at 1–2. "The non-moving party waives any arguments that were not raised in its response to the moving party's motion for summary judgment." *Nichols v. Mich. City Plant Plan. Dep't*, 755 F.3d 594, 600 (7th Cir. 2014). Because Shanklin did not respond to any arguments specific to Bakowski—namely, that the grievance form failed to identify Bakowski and that the amended complaint raises claims against Bakowski that are substantively disconnected from the issue that was grieved—the Court holds that Shanklin has waived those arguments, and enters summary judgment in favor of Bakowski.

Even if Shanklin had not waived any response to those arguments, the record evidence—even when viewed in Shanklin's favor—does support granting summary judgment to Bakowski. Shanklin's grievance form completely failed to identify Bakowski. Seventh Circuit case law requires a prisoner to "give the prison a fair opportunity to address his complaint prior to filing suit." *King v. Dart*, 63 F.4th 602, 609 (7th Cir. 2023) (cleaned up). It is true that a prisoner's grievance form need not, as an *absolute* rule, identify the jail personnel responsible for the alleged constitutional violation. *See Jones v. Bock*, 549 U.S. 199, 218 (2007) (holding that the PLRA does not require prisoners to name a defendant at the first step of the grievance process if the prison's policy does not include such a requirement); *Maddox v. Love*, 655 F.3d 709, 722–23 (7th Cir. 2011) (characterizing the plaintiff's failure to specifically name the defendants in a grievance as a "mere technical defect that had no effect on

the process"). But when an inmate is required by the grievance form "to provide identifying information regarding responsible officers, and the inmate's grievance and relevant circumstances do not allow even an inference that the inmate is complaining of a particular official, the grievance may be insufficient to exhaust the inmate's administrative remedies as to that official." *Houston v. Jones*, 2015 WL 9304489, at *5 (N.D. Ill. Dec. 22, 2015).

Here, the December 2021 grievance form does not allege that *Bakowski* used excessive force; instead, at most the grievance only names "Lawaski" in the witness section of the form, that is, the section marked "Name of Staff or Inmate(s) Having Information Regarding this Complaint." *See* Shanklin Grievance Forms at 17 (CCSAO000718). Indeed, Shanklin's initial description of the incident does not mention Bakowski and focuses instead on Surane's actions. *See id.* This is true of grievance forms that Shanklin submitted in the month following the incident as well. *See* Shanklin Grievance Forms at 5 (CCSAO000705) ("After getting my face slammed into the glass on 1E Dec. 17-21 at 1:00pm my tooth was broken by Serg Surane …."); *id.* at 10 (CCSAO000710) ("After getting my tooth broke in the inner lock by Serg Surane on 12-17-21 at 1:00pm."); *id.* at 22 (CCSAO000723) ("After being assaulted by Sgt Surane my tooth was broken."). So Shanklin failed to exhaust administrative remedies for any claims against Bakowski.

Bakowski also argues that the amended complaint raises claims against him that are substantively disconnected from the issue that Shanklin grieved. Bakowski Br. at 10–12. A "disconnect" between a prisoner's initial grievance and the lawsuit's

complaint can be deemed a failure to exhaust. *Bowers v. Dart*, 1 F.4th 513, 517–18 (7th Cir. 2021). In *Bowers*, the Seventh Circuit held that the plaintiff's "allegation in his grievance—that the correctional officer ignored him *during* the attack—is substantively distinct from the allegation in his federal complaint—that numerous prison employees knew of the risk and did nothing to protect [the plaintiff] from the impending harm *before* it occurred." *Id.* at 517 (emphasis in original); *see also Clark v. Trammell*, 2023 WL 2745009, at *4 (N.D. Ill. Mar. 31, 2023) (holding that the plaintiff's allegations that a failure to check medication levels and prescribe the proper levels of a medication in the complaint was disconnected from a grievance alleging that no officers responded immediately to his seizure). As discussed above, Shanklin's original grievance (and the ones that followed) only alleges that *Surane* shoved his face into the glass. But in the amended complaint, Shanklin alleges that "Defendants"—rather than Surane alone—"severely beat" him by "repeatedly punching" him "and shoving his face against a glass window," resulting in a broken tooth. Am. Compl. ¶¶ 9, 11. Shanklin's allegations against Bakowski in the amended complaint are thus different from what Shanklin alleged against *Bakowski* in the grievance forms—which, as discussed earlier, is nothing at all.

In sum, Shanklin has failed to exhaust administrative remedies for the federal law claim against Bakowski. Am Compl. ¶¶ 13–16. Given that the claim fails for lack of exhaustion rather than on the merits, the dismissal of that claim is, as a formal matter, without prejudice. *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) ("[A]ll dismissals under § 1997e(a) should be without prejudice."). Separately but relatedly,

there is no exhaustion requirement as to the state law claims (for intentional infliction of emotional distress and for battery). *McDaniel v. Meisner*, 617 F. App'x 553, 556 n.3 (7th Cir. 2015). So those claims against Bakowski remain intact. If co-defendant Surane eventually prevails on lack of exhaustion as to the federal law claim (which the Court takes up next), then no federal claims will remain and the Court will relinquish supplemental jurisdiction over the state law claims. But, for now, because the federal law claim against Surane remains in place until the evidentiary hearing, supplemental jurisdiction still applies to the state law claims against Bakowski.

**B. Surane**

Next is Surane's summary judgment motion. Surane argues that Shanklin failed to exhaust his administrative remedies because he did not appeal the grievance that he filed. Surane Br. at 6–9. To have exhausted his administrative remedies under 42 U.S.C. § 1997e(a), Shanklin must have grieved his claim through "all steps that the agency holds out," and he must have "do[ne] so *properly* (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (emphasis in original) (cleaned up). A detainee "who does not properly take each step within the administrative process has failed to exhaust" administrative remedies "and thus is foreclosed by § 1997e(a) from litigating" his claims. *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002).

But the crucial precondition to apply exhaustion is that the administrative remedies must actually be available: "[p]risoners need only exhaust available

remedies, not remedies that are unavailable." *Jackson v. Esser*, 105 F.4th 948, 956–57 (7th Cir. 2024) (cleaned up). "If administrative remedies are genuinely unavailable or nonexistent … [the courts] consider the prisoner to have satisfied the exhaustion requirement." *Id.* at 957. When a plaintiff argues that the administrative remedies were not available, as Shanklin does here, R. 98, Pl.'s Resp. to Surane Mot. at 2–4, and there are genuine fact disputes, a district court must conduct a *Pavey* hearing. *Pavey*, 544 F.3d at 742; *see also Wagoner v. Lemmon*, 778 F.3d 586, 588 (7th Cir. 2015) ("Often exhaustion (or its lack) will be apparent, but when it is not, the district court must hold an evidentiary hearing to resolve the question."). A *Pavey* hearing is not required when a plaintiff merely claims that administrative remedies are unavailable: a plaintiff must point to record evidence that creates a genuine dispute of material fact. *See Lynch v. Corizon, Inc.*, 764 F. App'x 552, 554 (7th Cir. 2019) ("Although a judge need not believe [plaintiff's] assertions, a sworn affidavit that is detailed, specific, and based on personal knowledge is competent evidence to warrant an evidentiary hearing." (cleaned up)).

As a threshold matter, the Court notes that the parties agree that Shanklin never appealed the December 17, 2021 grievance after he received the response on December 30. Pl.'s Resp. to Surane SOF ¶ 31; *see also* Shanklin Grievance Forms at 20 (CCSAO000721). It is on this basis that Surane moves for summary judgment, Surane Br. at 6–9, because under the PLRA, "[a]n inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action)" without exhausting available

administrative remedies, *Ross v. Blake*, 578 U.S. 632, 638 (2016) (quoting 42 U.S.C. § 1997e(a)).

But again, detainees "need only exhaust available remedies, not remedies that are unavailable." *Jackson*, 105 F.4th at 956–57 (cleaned up). When a remedy is so opaque that it becomes "essentially unknowable," such that no ordinary prisoner can make sense of what it demands, then prisoners are no longer required to exhaust. *Ross*, 578 U.S. at 644 (cleaned up). The Seventh Circuit has emphasized "that prisons should create understandable grievance procedures, ones clear and transparent enough to allow ordinary inmates to navigate them." *Hacker v. Dart*, 62 F.4th 1073, 1078 (7th Cir. 2023).

In arguing that administrative remedies were not available, Shanklin first swears that he was not provided with a copy of the grievance procedures during his time at the Cook County Jail. Shanklin Decl. ¶¶ 3–4. Shanklin also avers that staff never instructed him on how to complete a grievance or—importantly here—how to *appeal* the disposition of a grievance. *Id.* ¶ 5. Finally, Shanklin denies receiving (as an attachment to the grievance response) the document titled "I.I.C. Grievance Number: 2021x17845," which says that "[t]o exhaust your administrative remedy (*regardless of the OPR investigation review, determination, or outcome*) you must appeal this immediate grievance response within 15 calendar days," Shanklin Grievance Forms at 18 (CCSAO000719) (emphasis added). Shanklin Decl. ¶ 8.

Against this, Surane contends that those facts are immaterial because Shanklin concedes that he received the grievance response form itself, which says

that "[t]o exhaust administrative remedies, grievance appeals must be made within 15 calendar days of the date the inmate received the response. An appeal must be filed in all circumstances in order to exhaust administrative remedies." R. 101, Surane Reply at 3; Shanklin Grievance Forms at 20 (CCSAO000721).

The key case in evaluating this argument is *Hacker v. Dart*, 62 F.4th 1073, 1078 (7th Cir. 2023). As applied to the specific facts presented by Shanklin, *Hacker* requires rejection of Surane's reliance on the grievance form standing alone. In *Hacker*, the detainee—who also was in Cook County Jail—submitted a grievance after an officer allegedly shoved him, knocking him unconscious. *Id.* at 1079. The detainee received a response form notifying the detainee that his grievance had been referred to OPR. *Id.* The response form also said that the detainee had 15 days to appeal. *Id.* He did not do so, and OPR eventually issued a determination rejecting his claims of staff misconduct. *Id.* After the detainee brought a lawsuit, the defendants argued that he had failed to exhaust administrative remedies by failing to file an appeal within the 15-day window after receiving the initial grievance response form. *Id.* at 1078, 1080–81.

The Seventh Circuit rejected this argument. *Hacker*, 62 F.4th at 1080–81. The form failed to provide "clear instruction" to the detainee on what he should do: all the form did was tell the detainee that his complaint had been referred to OPR and (opaquely) that the detainee had 15 days to appeal. *Id.* But appeal what? Nothing in the form told the detainee what the referral meant, including whether "OPR's involvement would lead to a negative disposition of the underlying grievance." *Id.* at

1081. For all the detainee knew, referral to OPR was a victory for the detainee, or at the very least, that there could be "other remedial steps in the future." *Id.* "Indeed, the clear and sensible takeaway from the notice was that [the detainee] should stand by while OPR investigated his complaint against [the officer]." *Id.* Given the lack of a clear appellate step, the Seventh Circuit held that the grievance procedures became unavailable after the referral to OPR. *Id.* at 1081.

*Hacker* applies here. It is true that the grievance response form that Shanklin received says that he must file an appeal to exhaust administrative remedies. Shanklin Grievance Forms at 20 (CCSAO000721). But like in *Hacker*, it is not obvious—from the form itself, standing alone—*what* exactly Shanklin is supposed to appeal. In the section entitled, "CRW/Referred this Grievance to," the letters "OPR I/J" are handwritten, but without any further explanation on what those letters mean. *See id.* And in the section for "Response by Personnel Handling Referral," the words "- See attachment -" are written—again without further explanation. *Id.* The form, standing alone, did not adequately notify Shanklin about the need to appeal the referral to OPR. Shanklin denies ever receiving the document that *could* have been sufficient notice, Pl.'s Resp. to Surane SOF ¶¶ 24–25, that is, the document titled "I.I.C. Grievance Number: 2021x17845," Shanklin Grievance Forms at 18 (CCSAO000719). What's more, remember that a non-lawyer detainee might very well consider the referral to OPR as an investigatory next step, so the detainee would sensibly await the results of the OPR investigation before taking any further step in the grievance process. *See King*, 63 F.4th at 607 (observing that if the plaintiff had

appealed the referral notice to OPR, "the Jail would have likely reiterated that it referred the grievance to OPR and advised him to wait for the results of that investigation"). And—setting all that aside—nothing in the attached documents—including the two that Shanklin denies receiving—instruct Shanklin on *how* he would appeal the referral to OPR.

Aside from those genuine factual disputes, Shanklin also testified that he was never given the inmate handbook, which, according to the Defendants, contains instructions on the grievance process.[7] Shanklin Dep. at 20:24–21:13; Lake Decl. ¶ 16. And Surane has not put forth any testimony or other evidence showing that Shanklin received a copy of the handbook or was ever advised of the grievance process by staff, particularly on appeals.

Surane contends otherwise, arguing that—before mid-December 2021—Shanklin was clearly aware of the grievance process, because Shanklin successfully submitted two grievances unrelated to this lawsuit, and appealed one of them. Surane Reply at 4–5; *see* R. 87-5, Surane SOF Exh. E, Shanklin List of Grievances at 2 (CCSAO000075); Shanklin Grievance Forms at 16 (CCSAO000717). But there are significant differences between the October 2021 grievance response form that Shanklin appealed and the December 30, 2021 grievance response form that he did not appeal. The October form included an actual, final response from personnel—"[i]nmate offense is a class 443 high severity making his classification maximum" was

[7]The Defendants did not introduce a copy of the inmate handbook into the record.

written in the "Response by Personnel Handling Referral" box on the form. Shanklin Grievance Forms at 16 (CCSAO000717). And in the appeal section of the response form, Shanklin responded to that finding, writing, "I were in the computer system with an staff ass[au]lt and that's when they assign me as a maximum [detai]nee." *Id.* Shanklin also appealed another grievance response form in March 2022, which similarly included a substantive response on the form itself. *See* Shanklin Grievance Forms at 23 (CCSAO000724). Viewing the facts in the light most favorable to Shanklin, the lack of a definitive decision on the December 30, 2021 grievance response form, *see* Shanklin Grievance Forms at 17 (CCSAO000718), creates a genuine issue of material fact on whether the appeals process was available to Shanklin after the grievance was referred to OPR. A *Pavey* hearing is required to resolve these questions of fact. Surane's summary judgment motion is denied.

## IV. Conclusion

Bakowski's motion for summary judgment, R. 83, is granted: the federal law claim was not properly exhausted and is dismissed without prejudice. Surane's motion for summary judgment, R. 86, is denied. An evidentiary hearing is required to resolve the disputed issues of material fact on exhaustion. The Court will set a status

hearing to discuss the hearing scheduling and logistics. For now, because supplemental jurisdiction still applies, the state law claims remain intact here.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: September 22, 2026